Our first case is Moreno v. Lynch. Let's see, Mr. Mello. I'd be pleased to hear from you, sir. May it please the court. My name is Jim Mello and I'm an attorney from Raleigh, North Carolina. I represent the petitioner in this case, Mr. Sullivan Santos Moreno. Mr. Santos Moreno is a good person, a person with strong moral conviction, a moral conviction that has brought this case before you today. He tries to fight for his very life because of his refusal to engage and cooperate with a corporate police state in his home country of Honduras. Mr. Santos Moreno has petitioned the government to be granted asylum, withholding a removal, or the alternative, protection under the Convention Against Torture. As we all know, in order to qualify for asylum, an applicant must show under 8 U.S.C. 1158 B1A that he is unable or unwilling to return to his native country because of persecution or a well-founded fear of persecution on account of a bricked ground by the government or by an organization that the government is unable or unwilling to control. Withholding of removal is essentially the same but with a higher standard of proof and typically a denial of asylum would require a denial of withholding of removal. To be eligible for protection under the Convention Against Torture, the applicant must show that he would be tortured if removed to the proposed country of removal and that this persecution was inflicted or instigated or was given the consent or acquiescence of a public official. There need not be a tie to a protected ground. In Mr. Santos' case, the immigration judge and then the BIA in upholding the immigration judge's decision had denied Mr. Santos' application for all three. I'll refer primarily to the IJ's decision as it was adopted by the Board of Immigration Appeals in issuing its opinion. Furthermore, I'd like to point out that the BIA decision was one that was issued only by one judge and not a three-member panel and therefore its decision should only be given skid more deference pursuant to holdings of this court in Martinez, Cordova, and Hernandez. The IJ's decision can be divided into three distinct holdings. That Mr. Santos did not suffer past persecution and was unable to prove a well-founded fear of future persecution. That Mr. Santos did not serve for persecution on account of a protected group. In this case, membership in a particular social group because there was no social group. The social group here that we've stated is Hondurans who have been targeted by the police and their criminal associates to run drugs. That was the proposed social group in the individual hearing with the immigration judge. Under the evidence here, how many folks are in that social group? I mean, first I'd like to say that I think the holdings in regards to a social group having a numerical value, that's I don't think a requirement. I don't think the holdings that we have require such a number. Now this court hasn't necessarily held towards the social distinction or even the circuit. That has not been addressed. But I think the courts that have looked at social visibility, social distinction, and also looked towards the third requirement of political social group. Sorry, it eludes me. The delimiting particularity, the third aspect of a particular social group. None of those courts have decided, when they have accepted those, have decided that numerical value is important. You have here a targeting by an individual police officer. What is the evidence in the record that this is targeting by police, the police authority as opposed to one police officer who did that? Well, I think the evidence on the record would show one, Officer Vasquez was in uniform both times that he approached Mr. Santos. The first time that he approached Mr. Santos was at the checkpoint stop. Mr. Santos had to pass his bus six, seven, eight times a day through this checkpoint stop where there was 15 to 20 police officers working that police stop. Officer Vasquez was the main person in charge of that stop. Right, but is there any evidence in the case at all that Officer Vasquez was, his activities were known to any other police officer or any of his superiors? Well, my argument would be that at that first stop, he approached Mr. Santos within that context of 15 to 20 other officers in the immediate vicinity. Furthermore, Officer Vasquez in trying to run drugs and in running drugs was utilizing his position and his influence as, I'm going to say chief of police, I can't really say as to what the position was, but the chief of police of this bus station was in a particularly unique situation of power and authority to do so because he could utilize his status as chief of police of a vehicular checkpoint stop to further engage in his activities. Was there evidence that he targeted any other bus drivers? I'd have to concede that not specifically, no. There was nothing in the record that we provided or evidence that we provided that showed that Officer Vasquez had targeted other bus drivers. So you got one officer and one bus driver. That's what I was getting at earlier when I asked you on this record how expansive is your social group and you didn't answer it, but what it is on this record answer is one. Yes, if we look at it. And one officer, Officer Vasquez threatening Mr. Santos. We misnamed, I guess. It is Santos Moreno. I refer to him as Mr. Santos. But again, to get to the point, I think what's important here is that this particular position of this particular officer and the command that he had over this particular station because this particular station was the one that allows him to further expand the transportation of drugs. It's an essential element of his criminal activity. Would it be fair to say this is just a rogue police officer? I would disagree with that and I would disagree with that again. But on this record, that's all the evidence you got. I mean, it's a rogue police officer. What he's doing is bad. No question about it. But you only got one officer into it. My response to that would be even if we did find that he was a rogue police officer, I would argue that the IJ and therefore the BIA through upholding the IJ's decision failed in the sense that they still should have considered even if this was a who the government could or could not control. There is no analysis of that. The IJ simply decides this is a rogue actor, but yet doesn't look to the fact that, well, there's another alternative. Is this a rogue actor who could or could not be controlled by the government? We don't have that analysis. We don't have that opinion. And so I think that's another legal error that the IJ and the BIA failed to tell. How many times did Vasquez do this? Do what in particular? Threaten your man. Well, he threatened to beat him with the gun once. And that was enough. The first time it was merely a request to participate, in my contention, would be that's what placed him into the social group was that request. It wasn't the persecution. It was the request to deal these drugs that placed him in that social group. And then the second time when Officer Vasquez approached Mr. Santos, Officer Vasquez in uniform, in a police vehicle, came to his place of business where he was fueling his car at the end of the day. And at that time, with two other individuals, proceeded to beat him with fists and he went unconscious. And what I think is important in that conversation and in that interaction was that Mr. Santos specifically said to Officer Vasquez, I'm not going to say anything. I don't want to be involved. You don't have to worry about me. And Officer Vasquez specifically said, I can't take that risk. Furthermore, excuse me for a second. I've lost my train of thought. Officer Vasquez repeated his insistence that he needed to run the drugs. That this wasn't a game. And he held a gun to him. And so at that point in time. What do you want him to run the drugs where to? The United States? Well, Mr. Santos was a bus driver within Honduras. Where do you want him to take drugs? Well, he just wanted him to carry them on his bus. Just carry them on the bus? Right. And then deliver them to who knows where. I mean, we don't have those specific facts because it didn't get that far. Mr. Santos didn't engage in the activity. Right. But he didn't ask questions. But they wanted him to be a drug runner. Yes. They wanted basically to be a mule, as they say. And once that, once it was no longer a game, and once Officer Vasquez could no longer take that risk, there really was only three options for Mr. Santos. And that was to comply, die, or fly. And he fled. He came to the United States seeking protection. Was there any other evidence that this attack was motivated by anything other than personal retribution? Well, my argument in regards to that would be that, well, one, we don't have a proper analysis of a particular social group. We don't have any analysis of immutability. We have no analysis of social distinction or social visibility. We have no analysis of particularity. So we have no analysis of a particular social group. But withstanding that, I would argue that the particular social group here is, once that request was made, to carry on and engage in these activities, Mr. Santos became a member of that social group. Again, it wasn't the refusal to do so. It wasn't his lack of participation. And it had nothing to do with him being a bus driver. He would, and my argument again goes to... We're going to say it had something to do with him being a bus driver. Well, with the distinction being with the particular proposed social group, it's not necessarily tied to the type of employment that you have. It is simply that you are a person who has been requested to engage in these activities. And then this ties back to your question about this being a rogue police actor. The point being that if the political social group is analyzed properly, and then we look towards the question of, well, even if Officer Vasquez was a rogue actor, then we should still look and decide, is he still someone that the government is unwilling and are unable to control? And again, I don't think we have that answer on the record because we don't have that analysis. You're essentially, under the facts of this case, asking us to make a very broad sweep from the language on account of his race, religion, nationality, membership in a particular social group or political opinion. You've got a group of women. Now, all these other bases are, you know, pre-cognoscent. But when you've got a group, just make a name. Anybody come in and call an appeal and say, I'm a member of a social group and therefore I need to be protected. Unfortunately, my time is up, Your Honor. You can answer the question. Excuse me? You can answer the question. You answered your question. You can go ahead and do that. If you could clarify exactly what the... Well, what I'm suggesting to you or asking you that under the facts of this case, you're asking us to make a pretty broad sweep on account of membership in a particular social group. I would argue that there is... That would be part of the IJ's job in looking at the specific facts of the case because we would still need to look at nexus. We would still need to look at all the other issues. My main argument is that we don't have that analysis here and that's where the error has occurred. And that's why we're asking for this to be remanded so that we can get that analysis and so that we can look at those issues of particular social group in regards to social visibility, distinction, and all those other things. And so I think I can't answer that question. Thank you. Okay. Thank you very much, sir. Ms. Lukanich? That's right. She's next. She has four minutes. Then we're going to get to you, Ms. Tracz. May it please the court. My name is Alison Lukanich, an attorney out of Raleigh, North Carolina, and I also represent petitioner Mr. Sullivan Santos Moreno. To clarify some points from my colleague, returning to the standard of review that the Fourth Circuit has in this case, what we need to address here is the errors made by the Board of Immigration Appeals in their decision. What the Fourth Circuit needs to look at is did the board make any abuse of discretion when rendering their decision? Pursuant to Tassie v. Holder, the board abuses their discretion if they fail to offer a reasoned explanation or if they distort or disregard important aspects of the claim. Returning to the questions raised in this court in regards to the state actor, is there evidence that Officer Vasquez was involved in a bigger police conspiracy? Is there evidence that his superiors knew of his interactions? I would argue that the board, in adopting the immigration judge decision, made an error when they did not fully look at the evidence on the record. There were nine articles submitted from Honduran newspapers that were translated into English that showed similar actions by police officers. People that were civilians that were murdered in police checkpoints. Civilians that were extorted by police officers. Police officers that turned themselves into authorities or that were later arrested. Honduras is a country where there is a lot of impunity in the police force, in government actors. That evidence was on the record and that evidence was never considered by either the immigration judge or the board. And that is one of the errors that the board made in adopting the evidence on the record. They simply relied on our client's testimony alone. Well, is it strong contention that you're saying that the board confused the nexus element with the state actor element? Is that your argument? No, my argument is just simply that the board abused their discretion by not considering all of the evidence on the record. They did make a ruling as to nexus and they also adopted the immigration judge's ruling as to officer Vasquez not being a state actor. So they did do the analysis? They only analyzed the nexus requirement. They did not fully analyze whether the state actor was involved. They only adopted the immigration judge's analysis when he stated that officer Vasquez was not a state actor without going into further explanation of that. And if I may continue, because as my colleague mentioned, the Skidmore deference does apply to this case because it was issued, the board, it was a one-member decision that was not precedential. So what the Fourth Circuit has adopted there when looking at the BIA's consideration in the claim is whether the board in their analysis and their decision on the case was thorough when they gave this case consideration, whether it was valid in its reasoning, whether it was consistent with earlier and later pronouncements that the board has ruled on. Well, if the BIA properly analyzed the nexus requirement, were they required to reach the other elements of asylum? I would argue yes, they were because they never made a determination as to our proposed social group in so much as they additionally mischaracterized the social group. The proposed social group was Hondurans pressured to run drugs. It was Hondurans who have been targeted by the police and their criminal associates into drug running, yet they characterized as Hondurans pressured into running drugs, completely removing the police element. Thank you very much. We appreciate it. Mr. Hayes. May it please the court, Timothy Hayes on behalf of the Attorney General. This is solely a nexus case. The agency presumed all the other elements in Mr. Santos's favor. As for the authority for the board to do that, I point the court to INS versus VAG and MOSFAD, which allows the agency to decide only the issues that need to be decided and that are particularly relevant to its decision. The court should deny the petition for review in this case because the record does not compel the conclusion that a protected ground is at least one central reason for Mr. Santos's fear of returning to Honduras. This is a substantial evidence case because the court has held that the Chevron deference does not apply. There are no legal issues to decide in this case. The agency concluded that Officer Vasquez targeted Santos out of vengeance for not cooperating with his request to run drugs. That's at pages 65 and 66 of the IJ's decision. The agency concluded that fears of retribution over purely personal matters are not related to a protected ground and therefore denied his claim. The court should uphold the agency on this basis. On page 128 of the administrative record, Mr. Santos testified that friendship motivated Mr. Vasquez to approach him and ask him to run drugs. There was a friendship that developed between them. There is no evidence beyond the few news articles that are in the record that police officers generally target persons, that there is some sort of systematic conduct against people rather than just an aberrational conduct of a rogue individual. And I would analogize this case to the Cornejo case that this court decided in 2013. That was a gang case where the court said gangs take all kinds of retaliatory actions if a person refuses their requests. They'll attack bus company employees, passengers, attack the buses themselves as well as family members of the bus drivers. Their motivation is greed, not membership in a particular social group. And unless the court has any questions for me, that's... Thank you very much, Mr. Hague. Appreciate it. Mr. Mello? Very briefly, your honor. I'd like to go back to the nexus issue. Obviously, as the government points out, this is the main issue of contention. It's my argument that we can't get to nexus until we get to analyzing particular social groups. We don't have that because the nexus comes... But the evidence here, you don't have a group. You just got one fella. Well, my argument is that we don't have... A group sounds to me like I always thought a group needed to be at least two or three. Right, but we don't have a proper analysis from either the BIA or the IJ in regards to the group. They don't talk about any issues of immutability. They don't address immutability. They don't address social distinction, social visibility. They just simply say, there is no nexus. But there's no nexus to what? There needs to be an analysis of the proposed social group. We don't have that here. And so without first an analysis of the social group itself as proposed, there can be no analysis of the nexus itself because the nexus itself is based in first determining whether this is a valid social group or not. We don't have that. We don't have any of that analysis. And so, hence, we can't even get to the question of nexus without first answering that question. And that would be, unless there are any other questions. I'll be fine. Thank you very much. We'll come down in Greek council and go to the next case.
judges: Robert B. King, Barbara Milano Keenan, Henry F. Floyd